14-1113-cr(L)
*United States v. Monsalvatge et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of May, two thousand seventeen.

Present:
> DEBRA ANN LIVINGSTON,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges*,
> ANALISA TORRES,
> *District Judge*.[*]

---

UNITED STATES OF AMERICA,

> *Appellee*,

v.

AKEEM MONSALVATGE, EDWARD BYAM, DERRICK DUNKLEY,

> *Defendants-Appellants*.

14-1113-cr(L),
14-1139-cr(CON),
14-1206-cr(CON)

---

For Appellee:

TYLER J. SMITH, Jo Ann M. Navickas, Tiana A. Demas, Maria Cruz Melendez, Assistant United States Attorneys, *for* Bridget M. Rohde, Acting United States Attorney for the Eastern District of New York, Brooklyn, N.Y., *for the United States of America*.

---

[*] Judge Analisa Torres, of the United States District Court for the Southern District of New York, sitting by designation.

1

For Defendants-Appellants:

JONATHAN I. EDELSTEIN, Edelstein & Grossman, New York, N.Y., *for Akeem Monsalvatge.*

PATRICK MICHAEL MEGARO, Orlando, Fla., *for Edward Byam.*

DANIEL M. PEREZ, Law Offices of Daniel M. Perez, Newton, N.J., *for Derrick Dunkley.*

**UPON DUE CONSIDERATION WHEREOF it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgments of conviction of the district court as to Akeem Monsalvatge and Edward Byam are **AFFIRMED**; that the judgment of conviction of the district court on Counts One, Four, and Five as to Derrick Dunkley is **AFFIRMED**; that the judgment of conviction of the district court on Counts Two and Three as to Dunkley is **REVERSED**; and that the case is **REMANDED** for resentencing as to Dunkley.

Defendants-Appellants Akeem Monsalvatge, Edward Byam, and Derrick Dunkley appeal from judgments of conviction in the United States District Court for the Eastern District of New York (Dearie, *J.*), entered on April 10, 2014. The criminal action stems from two armed robberies — one on February 24, 2010, and the other on February 14, 2012 — of Pay-O-Matic check-cashing stores in Queens, New York. Following a jury trial, Monsalvatge, Byam, and Dunkley were each convicted on all counts: Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951(a) (Count One); Hobbs Act robbery on February 24, 2010, and on February 14, 2012, in violation of 18 U.S.C § 1951(a) (Counts Two and Four); and unlawful use of a firearm in a crime of violence in connection with the February 24, 2010 and February 14, 2012 robberies, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts Three and Five). We describe in detail the facts of this case in a concurrently published opinion.

On appeal, each Defendant-Appellant brings a number of claims. As relevant here, Monsalvatge, joined by Dunkley, raises four issues: (1) whether the evidence as to Counts Four

2

and Five was sufficient; (2) whether the district court improperly admitted evidence of an uncharged attempted robbery and Byam's arrest for possessing forged license plates; (3) whether the district court improperly limited cross-examination of an investigating detective; and (4) whether prejudicial error occurred when a Government witness identified Monsalvatge as one of the robbers on the surveillance footage.[1] Byam brings two challenges, alleging, with Monsalvatge, that the district court erred in admitting evidence regarding the attempted robbery and Byam's arrest for possessing forged license plates, and adding that the district court erroneously denied the suppression of certain physical evidence — to wit, a partially completed Pay-O-Matic application — found in Byam's residence at the time of his arrest. Dunkley raises three issues in his counseled brief on appeal: (1) whether the evidence as to Counts Two and Three was sufficient; (2) whether the district court erred in giving the jury a charge pursuant to *Pinkerton v. United States*, 328 U.S. 640 (1946); and (3) whether the district court erred in admitting evidence of the uncharged attempted robbery.[2]

We have carefully considered the claims enumerated here and, after a thorough review of the record, we conclude that they are without merit, with one exception. As to Dunkley's first claim on appeal — whether the evidence is sufficient as to his participation in the February 24, 2010 robbery, as charged in Counts Two and Three — we conclude that the evidence, while sufficient as to Monsalvatge and Byam, is insufficient as to Dunkley. We therefore reverse his conviction on Counts Two and Three and remand for resentencing as to Dunkley. As regarding

---

[1] A fifth issue — whether the district court erred in allowing the Government to play for the jury excerpts from the movie, *The Town* — is addressed in the opinion issued simultaneously with this summary order, in which we conclude that the district court did not abuse its discretion in this regard. Dunkley also joins in this claim on appeal.

[2] Monsalvatge joins each of Dunkley's counseled claims on appeal. Dunkley has, in addition, submitted a *pro se* filing in which he argues that he is entitled to relief pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015).

Counts One, Four, and Five as to Dunkley and each and every count as to Monsalvatge and Byam, we affirm.

\* \* \*

"A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011) (citation omitted). In evaluating the sufficiency of the evidence, this Circuit considers "the totality of the government's case . . . as each fact may gain color from others." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999). Although sufficiency is reviewed *de novo*, we affirm a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Nevertheless, "at the end of the day, 'if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt.'" *United States v. Cassese*, 428 F.3d 92, 99 (2d Cir. 2005) (quoting *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002)).

Dunkley contends that the evidence against him as to both Count Two (Hobbs Act robbery on February 24, 2010) and Count Three (unlawful use of a firearm in a crime of violence in connection with the February 24, 2010 robbery) was insufficient. We agree. The Government's proof at trial to support these counts as to Dunkley amounted principally to two kinds of evidence: identifying evidence (from the surveillance footage in conjunction with the testimony of Muhammed Hafeez) and cellular telephone records. The Government in addition

4

introduced evidence that Dunkley had completed transactions at the Rockaway Boulevard Pay-O-Matic, the site of the February 24, 2010 robbery, in 2010 and 2011. Gov't Ex. 85B. And it relied on ample evidence of Dunkley's participation in both the Hobbs Act robbery conspiracy and the 2012 armed robbery.

Although there is no question that the evidence was more than sufficient to support Dunkley's conviction as to Counts One, Four, and Five, we conclude that as to Counts Two and Three, the lack of evidentiary support for the Government's theory of the case requires that the convictions as to these counts be set aside. At the start, the Government's theory at trial was that Dunkley was "Robber 1" in the surveillance footage. Dunkley, as one detective testified, is black, 5'9" tall, and 180 pounds. Joint App'x 1002. Robber 1 was wearing a hooded sweatshirt, jeans, blue gloves with white text, and a bandana over his face. On the surveillance footage itself, it is difficult to ascertain any particular attributes of Robber 1 with certainty given his attire. Another detective analyzing the surveillance footage testified that the robber in the footage seemed to stand about 5'7" tall and to weigh 150 pounds. Hafeez, the Pay-O-Matic cashier and sole eyewitness, offered inconsistent testimony as to Robber 1. Hafeez testified at trial that Robber 1 was "not black or totally white" but "in the middle shade." *Id.* at 1400. Further, he testified that Robber 1 was "[m]aybe 5'5", 5'6"," *id.*, and "on the thin side," "between 140 and 150 pounds," *id.* at 1415. On cross-examination, Hafeez admitted that he had given a different description to the police: that Robber 1 was "a mix of Spanish and white," *id.* at 1414, likely "Hispanic, 5'3" to 5'5" [and] between 130 and 150 pounds," *id.* at 1433.

The Government offered cell phone records to buttress the inconclusive identification evidence. These records, however, were also significantly weaker in their tendency to identify Dunkley as one of the robbers, as opposed to Monsalvatge and Byam. The records do show

5

that Dunkley's cell phone exchanged calls with Monsalvatge's and Byam's phones, clearly supporting the inference that the three were in communication in the days surrounding the first robbery and even during the robbery itself. But a close review of the cell phone records — in particular, the records of the critical calls suggesting the robbers "cased" the Pay-O-Matic, and the calls during the actual robbery — demonstrates that Dunkley's cell phone records are significantly less probative than those of Monsalvatge or Byam and that these records, even considered in conjunction with the other evidence, could not establish Dunkley's personal participation in the February 24, 2010 robbery beyond a reasonable doubt.

To that end, Dunkley's cell phone number is not to be found among the early-morning calls to and from the cell phones belonging to Monsalvatge and Byam on February 17 and 19, 2010, when these phones were located near the Pay-O-Matic, suggesting that the robbers "cased" the Pay-O-Matic twice, both times at around 3 a.m. While Dunkley's and Byam's phones did exchange three early-morning calls on February 19 (but none at all on February 17), these calls occurred while Byam's phone was in the vicinity of Byam's home. Moreover, as cell-site information was not available for Dunkley's cell phone (unlike for Monsalvatge's and Byam's) there is no evidence at all as to *its* location during these calls.

The critical cell phone record evidence is from February 24, 2010, the day of the robbery. According to the Government, the robbery commenced at about 3:24 a.m. and ended about half an hour later, at about 3:57 a.m. The cell phone calls from that record occurred as follows:

- *Before the robbery.* Between 1:00 and 3:20 a.m., Dunkley and Byam's phones exchanged six calls.[3] Notably, at 2:27 a.m., Byam's phone placed a call to

---

[3] Although seven unique phone calls were logged during this period, one of them lasted 0 seconds: (1) at 1:21 a.m., from Dunkley to Byam (9 seconds); (2) at 1:43 a.m., from Dunkley to Byam (6 seconds); (3) at 2:04 a.m., from Byam to Dunkley (21 seconds); (4) at 2:05 a.m., from Dunkley to Byam (22 seconds); (5)

6

Monsalvatge's phone, and at 2:50 a.m., Byam received a call from Dunkley's phone, which created a three-way call that ended at 3:18 a.m., a few minutes before the beginning of the robbery.

- *During the robbery.* At 3:20 a.m., Dunkley's phone placed a call to Byam's phone that lasted 20 minutes and 10 seconds. Accordingly, this call was placed four minutes before the beginning of the robbery, and would have ended in the midst of the robbery, at approximately 3:40 a.m.[4]

- *After the robbery.* After the end of the robbery at 3:57 a.m., Dunkley's phone did not place or receive any calls until 9:17 a.m. Thereafter, Dunkley and Byam's phones exchanged five phone calls.[5]

The lack of cell-site information means that there is no cell phone evidence that Dunkley's phone was near the Pay-O-Matic at the time any of these calls took place. Moreover, the lengthy 3:20 a.m. phone call (from Dunkley's phone to Byam's phone) would have ended in the midst of the robbery, but Robber 1 in the surveillance footage does not appear to use a cell phone at any point during the robbery. This cell phone evidence as to Dunkley stands in stark contrast with the evidence as to Monsalvatge and Byam, whose cell phones, accessing the cell tower closest to the Pay-O-Matic store, exchanged some calls at about the same time that Robber 2 accessed his

---

at 2:50 a.m., from Dunkley to Byam (28 minutes, 7 seconds) (part of a three-way call); (6) at 3:18 a.m., from Dunkley to Byam (0 seconds); and (7) at 3:19 a.m., from Byam to Dunkley (37 seconds).

[4] Two other phone calls were logged during the robbery, both of which lasted 0 seconds: (1) at 3:40 a.m., from Byam to Dunkley (0 seconds); and (2) at 3:40 a.m., from Byam to Dunkley (0 seconds).

[5] Although six unique phone calls were logged after the robbery, one of them lasted 0 seconds: (1) at 9:17 a.m., from Dunkley to Byam (0 seconds); (2) at 9:18 a.m., from Byam to Dunkley (18 seconds); (3) at 12:02 p.m., from Byam to Dunkley (6 seconds); (4) at 12:03 p.m., from Byam to Dunkley (30 seconds); (5) at 12:14 p.m., from Dunkley to Byam (34 seconds); and (6) at 2:39 p.m., from Byam to Dunkley (4 seconds).

7

phone on the surveillance video.[6]  The cell phone record evidence for Dunkley, on the other hand, does not show any certain link between Dunkley's cell phone and either Robber 1 on the surveillance video (who does not appear on screen using a cell phone) or the Pay-O-Matic location more generally.

We conclude that as to Counts Two and Three this evidence, "viewed in the light most favorable to the prosecution" and in conjunction with all the other evidence presented at trial, nevertheless "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence."  *Cassese*, 428 F.3d at 99 (quoting *Glenn*, 312 F.3d at 70).[7]  There is insufficient evidence to establish beyond a reasonable doubt that Dunkley was Robber 1, actually robbing the Pay-O-Matic, as opposed to — hypothetically, in the light most favorable to the Government — an alternative theory that Dunkley, although clearly an associate of Monsalvatge and Byam, played a different role or none whatsoever during this first robbery.  Without something more, we cannot say, even on the totality of the Government's case, that any rational fact-finder could conclude that Dunkley was one of the armed robbers in the 2010 robbery.  *See Coplan*, 703

---

[6] The surveillance footage shows Robber 2 using his phone during the commission of the robbery at 3:35, 3:41, 3:48, 3:50, and 3:52 a.m.  Monsalvatge's cell phone records show that at 3:35 a.m., his cell phone placed a call to Byam's cell phone.  At 3:41, 3:48, 3:50, and 3:52 a.m., Monsalvatge's cell phone received calls from Byam's cell phone.  Monsalvatge's cell phone also received calls from Byam's cell phone at 3:44 and 3:49 a.m.

[7] Comprehensively marshaling the evidence with respect to Dunkley for the first time in its petition for rehearing, the Government argues that *Cassese*, rather than articulating the sufficiency of the evidence standard established in *Jackson v. Virginia*, actually created a new standard that requires a lesser showing of defendants seeking to bring sufficiency of the evidence challenges than *Jackson v. Virginia* demands. *Glenn*, the case *Cassese* relied on, carefully analyzed and elaborated on the *Jackson v. Virginia* standard in the course of its analysis, *Glenn*, 312 F.3d at 69-70, and cases since *Glenn* have done the same, *see, e.g.*, *Coplan*, 703 F.3d at 62, 72.  We need not consider here, however, whether *Glenn* and the cases following it departed from *Jackson v. Virginia* because we would reach the same conclusion in applying *Jackson v. Virginia*'s classic formulation: that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319.  Because, on the evidence presented here, no rational trier of fact "could have found the essential elements of the crime beyond a reasonable doubt," we reverse Dunkley's conviction as to Counts Two and Three.

F.3d at 62.   We thus reverse Dunkley's conviction on Counts Two and Three and remand his case for resentencing.

*      *      *

We have considered Defendants-Appellants' remaining claims and find them to be without merit.   Accordingly, we **AFFIRM** the judgments of conviction of the district court as to Monsalvatge and Byam; we **AFFIRM** the judgment of conviction of the district court on Counts One, Four, and Five as to Dunkley; we **REVERSE** the judgment of conviction of the district court on Counts Two and Three as to Dunkley; and we **REMAND** the case for resentencing as to Dunkley.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk